__Not for Publication__

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

   *Plaintiff*,

  v.

KAMAU MUNTASIR,

   *Defendant*.

Crim. Nos. 09-245; 12-524

__OPINION__

__John Michael Vazquez, U.S.D.J.__

  This matter comes before the Court by way of Defendant Kamau Muntasir's motion to modify his sentence and for immediate compassionate release. D.E. 32.[1] The Government filed opposition, D.E. 36, to which Defendant replied, D.E. 37. The Court reviewed the parties' submissions[2] and considered the motion without oral argument pursuant to Local Criminal Rule 1.1 and Local Civil Rule 78.1(b). Defendant seeks immediate release due to the ongoing COVID-19 pandemic. For the following reasons, Defendant's motion is denied.

---

[1] The docket entries refer to Crim. No. 09-245.

[2] Defendant's brief in support of his motion is referred to as "Br." (D.E. 32); the Government's opposition brief is referred to as "Opp." (D.E. 36); and Defendant's reply letter brief is referred to as "Supp." (D.E. 37).

## I. BACKGROUND

### A. Underlying Criminal Proceedings

Under Criminal Number 09-245, Muntasir was indicted for distributing cocaine base and heroin. On January 11, 2020, he plead guilty to the heroin count. On July 26, 2010, Muntasir was sentenced to 151 months in prison.

Defendant's actions while incarcerated led to the matter docketed under Criminal Number 12-524. In September 2011, Muntasir discussed a transaction involving 25 kilograms of cocaine with a fellow inmate; Muntasir was aiming to obtain a drug supplier for his friend in New Jersey. Muntasir and his friend had conversations as to the price and quantity of the cocaine, as well as the expected profits. On March 16, 2012, the friend attempted to purchase the 25 kilograms in New Jersey from an undercover law enforcement agent. The friend was arrested, charged, and pled guilty. Muntasir was also indicted for his actions and agreed to serve an additional 120 months of incarceration pursuant to Federal Rule of Criminal Procedure 11(c). On April 8, 2013, Muntasir was sentenced to the consecutive term.

Muntasir is currently housed at Hazelton FCI in West Virginia. He has completed his initial sentence and is now serving the additional 120 months that he received. He is scheduled to be released on March 9, 2028.

### B. COVID-19 Pandemic

COVID-19 "is caused by the virus severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2), a new virus in humans causing respiratory illness which can be spread from person-to-person." *COVID-19*, "COVID-19 Overview and Infection Prevention and Control Priorities in non-US Healthcare Settings," Centers for Disease Control and Prevention (Feb. 26, 2021), https://www.cdc.gov/coronavirus/2019-ncov/hcp/non-us-settings/overview/index.html

#background. "COVID-19 is primarily transmitted from person-to-person through respiratory droplets. These droplets are released when someone with COVID-19 sneezes, coughs, or talks." *Id.* Persons who contract the virus reflect a wide range of symptoms from asymptomatic to mild (including fever, cough, nausea, chest pain, and body pain) to severe to critical (including respiratory failure and death). *Id.* As a result, standard precautions to prevent the spread of the virus include social distancing, proper hygiene, personal protective equipment (including use of a face masks), and maintenance of clean surfaces and devices. *Id.*

Numerous factors can increase a person's risk of severe illness if he/she contracts the virus. As a person get older, his/her risk for severe illness from COVID-19 increases. *COVID-19*, "Older Adults," Centers for Disease Control and Prevention (May 14, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html. For example, persons in their sixties and seventies are at a higher risk than people in their fifties. *Id.* Those 85 or older are at greatest risk. *Id.* Adults 65 or older comprise 8 out of 10 COVID-19 deaths in the United States. *Id.* The following medical conditions put a person at increased risk of severe illness from COVID-19: cancer, chronic kidney diseases, chronic lung diseases (including asthma if it is moderate to severe), dementia or other neurological conditions, heart conditions such as coronary artery disease, weakened immune system from organ transplant, obesity, pregnancy, sickle cell disease, smoking, stroke or cerebrovascular disease, and type 2 diabetes mellitus. *COVID-19*, "People with Certain Medical Conditions," Centers for Disease Control and Prevention (May 13, 2021),[3] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

---

[3] The CDC previously provided two separate lists, one listing conditions that entailed a greater risk of severe illness and one setting forth conditions that might involve a greater risk.

As of May 27, 2021, the United States has had 32,994,369 COVID-19 cases, resulting in 588,421 deaths. *COVID Data Tracker*, Centers for Disease Control and Prevention, https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days (last visited May 27, 2021).

### C. Federal Bureau of Prisons

The Federal Bureau of Prisons ("BOP") has taken the following steps to combat the virus. On March 13, 2020, the BOP modified its operations in accordance with its "COVID-19 Action Plan." *Federal Bureau of Prisons COVID-19 Action Plan*, Federal Bureau of Prisons (Mar. 13, 2020), https://www.bop.gov/resources/news/20200313_covid-19.jsp. Initially, all social visits, inmate movement, and official staff travel were suspended for thirty days. *Id.* Contractors who enter any BOP facility are screened for the virus and, initially, admission was limited to contractors who performed essential services. *Id.* The BOP also conducts enhanced health screenings for staff in areas of "sustained community transmission." *Id.* The BOP screens all new inmates for virus "exposure risk factors and symptoms." *Id.* Any new inmate who is asymptomatic but has had a risk of exposure is quarantined. *Id.* According to the Government, the quarantine period is for a minimum of 14 days or until cleared by medical staff. Opp. at 4. The Government indicates that new inmates who are symptomatic are placed in isolation until they test negative for the virus or are cleared by medical staff. *Id.* at 5. The Government also states that the BOP has taken the following steps to prevent the spread of the virus: group gatherings are limited to permit social distancing as much as possible, all staff and inmates have been issued face masks, and all staff and inmates are strongly encouraged to wear face masks when social distancing cannot be achieved. *Id.*

The BOP also has a COVID-19 vaccination plan. *COVID-19 Vaccine Guidance*, Federal Bureau of Prisons Clinical Guidance (Mar. 11, 2021), https://www.bop.gov/resources/pdfs/covid19_vaccine_guidance_20210311.pdf. Inmates fall into different priority levels for vaccination: Priority Level 1 (for inmates in certain high priority jobs, including health service unit assignments); Priority Level 2 (inmates who are 65 or older or who are, according to CDC criteria, at an increased risk for severe illness from the virus); Priority Level 3 (inmates who are aged 50 through 64 or who might be, according to CDC criteria, at an increased risk for severe illness from the virus); and Priority Level 4 (all other inmates). *Id.* As of May 27, 2021, the BOP had administered 182,690 doses of vaccine. *COVID-19*, "Vaccine Implementation," Federal Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited May 27, 2021).

The BOP COVID-19 current statistics are as follows: (1) 58 inmates and 129 staff have confirmed positive tests; (2) 45,521 inmates and 6,834 staff have recovered; and (3) 237 inmates and 4 staff have died. *Id.* Hazelton FCI, where Defendant is housed, currently reports no positive cases among inmates or staff. *Id.* In addition, 138 inmates and 77 staff have recovered, and one inmate has died.

### D. Muntasir's Other Relevant Background, Activities, and Conditions

Muntasir's primary argument is that he should be released due to the COVID-19 pandemic in light of his age and medical conditions. Muntasir indicates that he will soon be 50 years old and that he suffers from hypertension and is also prediabetic. Br. at 4-5.[4] Muntasir also points out that jails and prisons have been the locations of some of the largest COVID-19 outbreaks. *Id.* at

---

[4] Muntasir initially indicated that he also suffered from emphysema, Br. at 5, but later withdrew this argument. Reply at 3 n. 1.

6. At the time of his initial brief, 321 staff members and 329 inmates (out of approximately 1,819) at Hazelton FCI had been vaccinated. Br. at 8. Muntasir adds that staff members were prioritized for vaccination. *Id.*

Muntasir also notes that he has only received one disciplinary infraction, for marijuana possession, since his 2011 crime. *Id.* at 3. He indicates that he has participated in many rehabilitative programs while incarcerated, including 450 hours in a course entitled VT Building Trade Marketable as well as Psychology Management Drug Abuse Education. Defendant states that he suffers from several other ailments: glaucoma in both eyes, degenerative lumbar discs (along with disc fusion surgery), and diminished breathing capacity due to a birth defect. *Id.* at 8. Despite these physical obstacles, Muntasir indicates that he intends to resume work in construction if released. *Id.* at 11.

The Government opposes Defendant's motion, noting that his hypertension is well-controlled with medication and that a prediabetic condition is not a risk factor listed by the CDC. Opp. at 3. At the time that the opposition was filed, Hazelton FCI had fully vaccinated 377 staff and 1,782 inmates. *Id.* at 4. The Government emphasizes that on April 7, 2021, Muntasir was offered the vaccine but declined for "fear of effects." Ex. D. The Government further asserts that Defendant should not be released due to the seriousness of his offenses, his extensive criminal history (Defendant had 28 criminal history points when sentenced in April 2013, stemming from convictions that included armed robbery, illegal possession of firearms, and distribution of cocaine and heroin), and the substantial amount of time remaining on his second sentence.

As to declining the COVID-19 vaccine, Muntasir states that it has only been approved on an emergency basis and it is not clear how it will work as to variants. Reply at 1. Defendant adds

that a percentage of front-line workers, including police, have refused to be vaccinated. *Id.* at 1-2.

On May 1, 2020, Muntasir wrote to the Warden of Hazelwood, seeking compassionate release. Ex. A. Muntasir, however, indicated that he should be released due to back problems and loss of dexterity, rather than COVID-19 related issues. *Id.* The Warden denied the request on June 10, 2020. Ex. B. The Warden also denied Muntasir's subsequent appeal, finding that Defendant was "Medical Care 1," meaning that he was healthy or required simple chronic care. Ex. A. The Warden noted that Muntasir was healthy and had no medical restrictions. *Id.*

### E. LEGAL STANDARD

Following the passage of the First Step Act, Section 3582(c)(1)(A) now reads as follows:

(c) Modification of an imposed term of imprisonment. The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), *after considering the factors set forth in section 3553(a) to the extent that they are applicable*, if it finds that—

(i) *extraordinary and compelling reasons warrant such a reduction*; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and *a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)*;

7

> *and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission*; and
>
> > (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and
>
> > (2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A) (emphases added). The parties agree that Defendant has satisfied the statutory exhaustion requirement.

The applicable policy statement of the United States Sentencing Commission is found in Section 1B1.13. U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018). The application notes to the section provide 4 circumstances that can be considered extraordinary and compelling: (1) the medical condition of the defendant, (2) the age of the defendant, (3) family circumstances, and (4) other circumstances constituting an extraordinary or compelling reason, either considered alone or in combination with any of the other three stated reasons. *Id.* cmt. n. 1(A)-(D). Certain courts have determined that the policy statement is not binding on courts in connection with motions like the one at bar but have nevertheless found that the statement provides useful guidance. *United States v. Viteri*, Crim. No. 19-00044, 2020 WL 3396804, at *3 (D.N.J. June 19, 2020).

In the application note, the fourth consideration requires a determination by the Director of the BOP. *Id.* cmt. n. 1(D). Here, the Government does not contest that the policy statement should also apply when the motion is filed by a defendant, in addition to a motion filed by the BOP

Director. The Court agrees. *See, e.g.*, *United States v. Rodriguez*, 451 F. Supp. 3d 392 (E.D. Pa. 2020).

Pursuant to Section 3582(c)(1)(A), the Court must also consider the relevant factors listed in 18 U.S.C. § 3553(a). They include the nature and circumstances of Defendant's offense, the history and characteristics of Defendant, the need for the sentence to provide just punishment, and the need to protect the public from future offenses by Defendant. *Id.*

### F. ANALYSIS

Turning first to Muntasir's arguments concerning the pandemic, his hypertension potentially increases his risk of suffering an adverse outcome should he contract the virus. This factor weighs in favor of Defendant's request.

However, the Court finds that Defendant has not met his burden as to extraordinary and compelling circumstance for the following reasons. First, Muntasir declined to be vaccinated. As a result, this Court joins the numerous other courts who have found that such a decision demonstrates that a defendant has voluntarily foregone an opportunity for self-care offered by the BOP. *See, e.g.*, *United States v. Baeza-Vargas*, No. Cr-10-00448, 2021 WL 1250349, at *2-3 (D. Ariz. Apr. 5, 2021) (listing more than a dozen decisions reaching the same result). Defendant has not provided any medical reason for refusing (to the contrary, based on his hypertension, he has an additional medical reason to receive the vaccine); he simply refused. *See United States v. Jackson*, No. 07-40-2, 2021 WL 1145903, at *2 (E.D. Pa. Mar. 25, 2021). Defendant is within his rights to refuse the vaccine, but any corresponding argument that he must be released because of potential complications were he to contract the virus rings hollow. *United States v. Jackson*, No. 15-cr-260(7), 2021 WL 806366, at *1-2 (D. Minn. Mar. 3, 2021).

Second, Hazelwood's currently has no COVID-19 infections, and the vast majority of inmates have been vaccinated. Third, Muntasir's hypertension is well-controlled, and his prediabetic condition is not listed as a risk factor by the CDC. Finally, Muntasir has been receiving consistent medical care and treatment.

The Court also agrees with the Government that the Section 3553(a) factors militate against release. Muntasir has taken numerous programs at the BOP, which favor his request. At the same time, his criminal history is extraordinarily high. In addition, he committed the offense for which he is now serving while incarcerated in federal prison. Such behavior clearly bespeaks of the need for both general and specific deterrence. And he still has nearly eight years to serve before he is eligible for release, meaning he is still in the early stages of the 120 months' sentence. *See United States v. Pawlowski*, 967 F.3d 327, 330-31 (3d Cir. 2020) (ruling that in deciding a motion for compassionate release, a district court may consider the amount of time remaining on a defendant's sentence). On this point, the Third Circuit has made the following observations:

> We have not previously considered whether a district court abuses its discretion by denying a motion for compassionate release based on the amount of time remaining to be served in the inmate's sentence. But numerous district courts have taken this into account in considering whether to grant compassionate release. *See, e.g.*, *United States v. Bogdanoff*, No. 12-cr-0190-1, 459 F. Supp. 3d 653 (E.D. Pa. May 8, 2020) (denying compassionate release where the inmate had served only seven years of an 18-year sentence, and noting that the case was "much different than others where defendants [sought compassionate release] at the end of their sentence"); *United States v. Moskop*, No. 11-cr-30077, 2020 WL 1862636, at *1-2 (S.D. Ill. Apr. 14, 2020) (denying compassionate release where the inmate had served less than 10 years of a 20-year sentence and explaining that the "sentencing objectives of specific deterrence and protecting the public [would] not [be] fully served by less than 10 years of incarceration"). And at least one of our sister circuits has approved that consideration. *See Chambliss*, 948 F.3d at 694 (holding that a district court did not abuse its discretion in denying compassionate release based, in part, on the defendant's having served only 14 years of a 30-year sentence). We agree, as

> this consideration is consistent with the text of 18 U.S.C. § 3582(c)(1)(A), which, again, requires a court reviewing a motion for compassionate release to "consider[ ] the factors set forth in [§] 3553(a) to the extent that they are applicable." Because a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time remaining in that sentence may—along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates—inform whether immediate release would be consistent with those factors. Hence we cannot conclude that the District Court acted unreasonably in determining that the substantial sentencing reduction required for granting compassionate release here—a reduction from 15 years to less than two years—would be inconsistent with the § 3553(a) factors.

*Id.* at 330-31 (footnotes omitted).

## G. CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion. An appropriate Order accompanies this Opinion.

Dated: May 27, 2021

                                                                                            _____
                                                                                            John Michael Vazquez, U.S.D.J.

11